**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOE A. LEWIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:04-CV-0523-N** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's Order of Reference, the District Court referred this case to

the United States Magistrate Judge.  Before the Court is Plaintiff's Brief, filed September 15, 2004;

Defendant's Brief, filed December 27, 2004; and Plaintiff's Reply, filed January 6, 2005.  For the

reasons stated below, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

**BACKGROUND**[1]

**I.  Procedural History**

This is a social security case.  Plaintiff Joe E. Lewis ("Plaintiff") seeks judicial review of a

final decision by Defendant, the Commissioner of Social Security ("the Commissioner"), who

denied Plaintiff's claim for disability benefits and supplemental security income.  Plaintiff filed

applications for supplemental security income in November 1999 and again in June 2000.  (Tr. at

594-95, 597-99.)  Plaintiff filed an application for disability benefits in November 1999.  (*Id.* at

---

[1]The following procedural history comes from the transcript of the administrative
proceedings, which is designated as "Tr."

111.)  Plaintiff claimed a disability onset date of October 13, 1998.  (*Id.* at 113, 594.)  Plaintiff's

applications were denied both initially and upon reconsideration.  (*Id.* at 596, 600-05).  Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 92-93.)  Following a

hearing on November 30, 2001, the ALJ issued a decision on July 16, 2002.  (*Id.* at 27-65, 12-26.)

The ALJ concluded that Plaintiff "retains the residual functional capacity . . . to perform a wide

range of light work activities that do not require lifting and/or carrying more than twenty pounds

occasionally and ten pounds frequently."  (*Id.* at 25.)  The Appeals Council denied Plaintiff's request

for review.  (*Id.* at 5-7.)

        The case is now before this Court.  Plaintiff alleges in his brief that: (1) substantial evidence

does not support the ALJ's findings on Plaintiff's physical impairment; (2) substantial evidence does

not support the ALJ's findings on Plaintiff's mental impairments; and (3) Plaintiff had significant

nonexertional limitations that precluded competitive work on a regular and continuing basis.  (*Pl.'s

Br.* at 8-14, 14-16, 17-20.)

**II.  Factual History**

        A.  Plaintiff's Age, Education, and Work Experience

        At the time of Plaintiff's hearing, Plaintiff was thirty-one years old.  (Tr. at 16.)  Plaintiff has

an eleventh grade education.  (*Id.*)  Plaintiff's past relevant work includes busboy, dishwasher,

serving line worker, stock clerk, cashier, and security guard.  (*Id.* at 144, 155.)

        B.  Plaintiff's Medical Evidence

                1.  Plaintiff's Physical Impairments

        Plaintiff has both physical and mental impairments.  The Court first outlines the medical

evidence relating to Plaintiff's physical impairments.  Plaintiff first began experiencing back

2

problems after an on the job injury on October 13, 1998, after which Plaintiff received treatment at Methodist Hospitals of Dallas. (*Id.* at 350-56.) At that time, movement and ambulation exacerbated Plaintiff's pain. (*Id.* at 352.) A straight leg raise test was positive at seventy degrees and caused pain that radiated into his toe. (*Id.* at 510.) X-ray results revealed a compression deformity at disc L4, and Plaintiff was diagnosed with lumbrosacral disc herniation with sciatica. (*Id.*)

In November 1998, Plaintiff visited the Family Practice Center at Methodist Hospital and complained that his left leg was giving out and that he had radiating pain in his left leg. (*Id.* at 542-43.) Lewis was diagnosed with low back pain and radiculopathy. (*Id.* at 542.) Plaintiff again visited the Family Practice Center in February 1999, complaining of low back pain with radiculopathy to both legs. (*Id.* at 538.)

In April 1999, Plaintiff had a MRI taken of his spine, which revealed that a diffuse bulge at L4-5 and a diffuse bulge at L3 were flattening the thecal sac. (*Id.* at 341, 342, 441, 442.) The MRI was considered limited because Plaintiff was unable to remain still during the MRI due to claustrophobia, even though he had taken a Valium. (*Id.*) Also in April 1999, Plaintiff was involved in a car accident, which resulted in a visit to the emergency room at Methodist Hospital. (*Id.* at 322.) During this visit, Plaintiff reported decreased sensation in his lower extremity. (*Id.* at 323.)

In August 1999, Dr. George W. Wharton ("Dr. Wharton") evaluated Plaintiff and concluded that Plaintiff should be released to work with a 0% impairment rating. (*Id.* at 281.) Dr. Wharton stated that "[there are] no findings to suggest that he ha[d] a lesion which would in any way interfere with his ability to do any activity for which he is otherwise qualified by education and experience." (*Id.*) Later in August 1999, a MRI was performed on Plaintiff, revealing a disc bulge toward both

neural foramina with impingement on the exiting neural elements though not to a significant degree. (*Id.* at 438.)

In September 1999, Plaintiff received a recommendation to participate in a four week work hardening program for the purpose of increasing his physical strength, flexibility, and endurance, and addressing psychological issues interfering with his recovery. (*Id.* at 236.) Dr. Ara R. Dayian ("Dr. Dayian") evaluated Plaintiff in October 1999 and agreed with Dr. Wharton's conclusion that Plaintiff had attained maximum medical improvement on August 25, 1999. (*Id.* at 222.) Dr. Dayian diagnosed Plaintiff with lumbar strain and atypical, inconsistent neurological complaints. (*Id.*)

Dr. John Townsend ("Dr. Townsend") saw Plaintiff twice in October 1999 at Metroplex Orthopedics. Dr. Townsend recommended that Plaintiff participate in a chronic pain management program, which Plaintiff did not do. (*Id.* at 212.) Dr. Townsend also stated that Plaintiff was unwilling to undergo surgery if surgery became available as a treatment option. (*Id.*) Dr. Townsend released Plaintiff with a 13% impairment rating due to spinal problems with radicular symptoms to the lower extremities. (*Id.* at 213.) Dr. Townsend reported that Plaintiff was at maximum medical improvement. (*Id.* at 212.)

In January 2000, Dr. S. W. Casner ("Dr. Casner"), a State Agency physician, issued a report, following a review of Plaintiff's medical records. (*Id.* at 178-185.) Dr. Casner concluded that Plaintiff could perform light work. (*Id.* at 179.) Later in January, Plaintiff returned to the emergency room at Methodist Hospital, complaining of spasms and inability to stand or bend. (*Id.* at 546.) The attending physician, Dr. Jason Phillips ("Dr. Phillips") released Plaintiff and stated that Plaintiff could return to work as long as he did not lift more than ten pounds. (*Id.* at 550.)

In April 2000, Plaintiff again visited the emergency room, claiming back pain radiating down

4

his leg and worsened by standing.  (*Id.* at 554.)  Plaintiff was prescribed Lortab and discharged, with

his condition at discharge reported as "good."  (*Id.* at 555.)  Plaintiff also visited the emergency

room in May and July 2000, complaining of back pain, and at both visits, back exercise

rehabilitation programs were recommended.  (*Id.* at 556, 574.)

In May 2000, Dr. Townsend saw Plaintiff, and Plaintiff was complaining of numbness in his

legs and back pain.  (*Id.* at 423.)  Dr. Townsend recommended a MRI be conducted, possible

surgery, and a regimen of medicine treatments.  (*Id.* at 424.)  Plaintiff did not visit Dr. Townsend

again until February 2001, at which time Plaintiff said he could not walk due to his back pain.  (*Id.*

at 383.)  Dr. Townsend noted that Plaintiff walked into the clinic, and that, contrary to Plaintiff's

report that he could not move his arms, Plaintiff moved his arms without difficulty when Plaintiff

was distracted or angry.  (*Id.*)

Dr. Phillips gave multiple opinions on Plaintiff's condition between February and June 2000.

(*Id.* at 520-530, 579-82.)  Dr. Phillips gave various opinions about Plaintiff's condition, including

discussion of lifting restrictions and sitting fifteen to twenty minutes every three hours.  (*Id.* at 525,

527, 529, 579, 582, 587, 589.)  He stated that Plaintiff's condition was permanent.  (*Id.* at 578.)  In

his responses to interrogatories, Dr. Phillips opined that Plaintiff's impairment was equal in severity

to Listing 1.05C of the Social Security musculoskeletal impairments.  (*Id.* at 590-93.)

In July 2001, Plaintiff was seen at Charlton Methodist Hospital Sports Medicine Center.  (*Id.*

at 673.)  The notes from Plaintiff's visit indicate that Plaintiff requested that the examining doctor

"give him disability."  (*Id.*)  The examining doctor also noted that, although Plaintiff walked in and

out of the exam room normally, Plaintiff had difficulty walking once in the exam room.  (*Id.*)

2.  Plaintiff's Mental Impairment

Now the Court turns to the medical evidence relating to Plaintiff's mental impairment. Plaintiff's September 1999 functional capacity evaluation indicated that Plaintiff had psychological issues interfering with his recovery. (*Id.* at 236.) Plaintiff reported symptoms of decreased energy, sleep disturbances, crying, continuous worrying, and becoming easily upset or irritated. (*Id.* at 258.) In June 2000, Dr. Phillips prescribed Zoloft to address Plaintiff's depression, decreased energy, feelings of guilt, and decreased appetite. (*Id.* at 521.)

In September 2000, Dr. Gail Driskill Lambeth, Ph.D. ("Dr. Lambeth"), performed a government ordered, consultative examination. (*Id.* at 511-517.) Dr. Lambeth concluded that Plaintiff has some symptoms of depression and borderline intellectual functioning. (*Id.* at 516.) Dr. Lambeth rated Plaintiff's global functioning assessment at 50. (*Id.*) Dr. Lambeth's prognosis for Plaintiff was fair to guarded, and Dr. Lambeth stated that this prognosis was dependent upon continued medical intervention for Plaintiff's back problems. (*Id.*) Dr. Lambeth also stated that Plaintiff "would likely benefit from some psychological and/or psychiatric intervention for his current depressive symptoms." (*Id.*)

In October 2000, Dr. Jim L. Cox, Ph.D. ("Dr. Cox"), a non-examining doctor with the State Agency, reviewed Plaintiff's medical records and opined that Plaintiff had a depressive disorder, including symptoms of anhedonia, sleep disturbance, feelings of guilt, difficulty concentrating, and borderline intellect. (*Id.* at 368, 377.) Dr. Cox found that Plaintiff had a moderate degree of limitation in his daily activities and social functioning and a mild degree of limitation in maintaining concentration, persistence, or pace. (*Id.* at 375.)

In February 2001, Dr. Townsend requested that Plaintiff undergo a mental health assessment. (*Id.* at 416.) Dr. Townsend's request for a mental health assessment stated that Plaintiff was

experiencing anxiety, depression, disrupted thought processes, and sleep disturbances. (*Id.*)

In November 2003, Dr. George R. Mount, Ph.D. ("Dr. Mount"), conducted a psychological evaluation of Plaintiff. (*Id.* at 642-51.) Dr. Mount concluded that Plaintiff's impairments met the criteria of Listing 12.04 for affective disorders and the criteria of Listing 12.07 for somatoform disorders. (*Id.* at 654, 657, 660, 664.) Dr. Mount assigned Plaintiff a global functioning assessment of 50. (*Id.* at 646.) Dr. Mount stated that Plaintiff's ability to complete a workday or workweek without interruption was poor, as was his ability to relate to coworkers and interact with supervisors. (*Id.* at 652-53.) Plaintiff submitted Dr. Mount's report to the Appeals Council, but the report was not part of the evidence before the ALJ. (*See* Pl.'s Br. at 7.)

C. <u>Plaintiff's Hearing</u>

Plaintiff's hearing took place on November 30, 2001. (Tr. at 27.) Attorney Matthew Stewart represented Plaintiff at the hearing. (*Id.*) Plaintiff's wife Yolanda Lewis also attended the hearing. (*Id.* at 31.)

Upon questioning by the ALJ, Plaintiff first outlined his age, education, and work experience. (*Id.* at 31-48.) Then, upon questioning by his attorney, Plaintiff discussed his limitations. Plaintiff stated that he can only stand for ten minutes without leaning or using a cane. (*Id.* at 48.) Plaintiff said that he can walk for thirty minutes before he needs to rest. (*Id.* at 49.) As to Plaintiff's sitting capabilities, he said that he needs a chair with arm support and cannot even sit down for five minutes in a chair without arms. (*Id.*) Plaintiff said that he can drive for thirty minutes and cannot lift anything. (*Id.* at 50.) Plaintiff stated that he takes Narco at nighttime for his back pain and sometimes takes Tylenol. (*Id.* at 51-52.) He said that he alternates sitting down and lying down with his legs elevated during the day. (*Id.* at 52.)

Plaintiff said that he had no daily activities besides watching television, occasionally riding with his wife to take his daughter to school, and light cooking when necessary.  (*Id.* at 53-55.) Plaintiff stated that he goes to church with his brother three times a week.  (*Id.* at 56.)  At church, he serves as an assistant teacher and an occasional secretary.  (*Id.*)  Plaintiff said that he occasionally goes to the grocery store with his wife.  (*Id.* at 57.)

Plaintiff described his disabling conditions as extreme back pain that radiates into his legs and numbness in his legs.  (*Id.* at 59.)

The ALJ next examined the Vocational Expert ("VE") as to Plaintiff's past work.  The VE classified Plaintiff's past work as a busboy and dishwasher (medium, unskilled work, SVP of 2), serving line worker (light, unskilled work, SVP of 2), stock clerk (heavy, unskilled work, SVP of 2), cashier (light, semiskilled work, SVP of 3), and security guard (light, semiskilled work, SVP of 3).  (*Id.* at 60.)

## III.  The ALJ's Findings

The ALJ issued an unfavorable decision on July 16, 2002.  (*Id.* at 15-26.)  The ALJ found that, although Plaintiff's back and affective/mood disorders are severe, Plaintiff's impairments do not meet or medically equal one of the listed impairments.  (*Id.* at 25.)  The ALJ found that Plaintiff has the residual functional capacity to perform a wide range of light work activities that do not require lifting and/or carrying more than twenty pounds occasionally and ten pounds frequently. (*Id.*)  Although the ALJ found that Plaintiff is unable to perform his past relevant work, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff can perform.  (*Id.* at 26.)  The ALJ ultimately concluded that Plaintiff is not disabled as defined in the Social Security Act.

## ANALYSIS

**I.  Legal Standard**

To receive social security benefits, Plaintiff must establish that he is disabled for purposes of the Social Security Act.  *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The Social Security Act defines a disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423 d(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings; (2) an individual who does not have a "severe impairment" will not be found disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing the work he or she has done in the past, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes him or her from performing his or her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.   *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).  The claimant bears the burden of proving he or she is disabled under the first four steps.  *Leggett*, 67 F.3d at 564.  If at any point during the examination of the first four steps the

Commissioner determines the claimant is or is not disabled, the inquiry terminates. *Id.* If the claimant meets his or her burden under the first four steps, the Commissioner then bears the burden at step five to show the claimant is capable of performing other gainful employment available in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Commissioner may satisfy this burden by referencing the Medical-Vocational Guidelines of the regulations or by expert vocational expert testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination receives great deference. *Leggett*, 67 F.3d at 564. Title 42, section 405 (g) of the United States Code Annotated limits judicial review of the Commissioner's findings to: (1) whether substantial evidence supports the decision and (2) whether the Commissioner utilized the proper legal standard. 42 U.S.C.A. § 405(g) (1999); *Greenspan*, 38 F.3d at 236. Substantial evidence is "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The Court does not re-weigh the evidence, retry the issues, or substitute its own judgment for that of the Commissioner. *Greenspan*, 38 F.3d at 236. Instead, the Court scrutinizes the record to determine whether substantial evidence supports the decision. *Id.*

## II.  Issues for Review

Plaintiff alleges in his brief that: (1) substantial evidence does not support the ALJ's findings on Plaintiff's physical impairments; (2) substantial evidence does not support the findings on Plaintiff's mental impairments; and (3) Plaintiff had significant nonexertional limitations that precluded competitive work on a regular and continuing basis. (Pl.'s Br. at 8-14, 14-16, 17-20.)

A.   Does Substantial Evidence Support the ALJ's Findings on Plaintiff's Physical Impairments?

The Court turns first to Plaintiff's contention that substantial evidence does not support the ALJ's findings on Plaintiff's physical impairments.  (*See* Pl.'s Br. at 8-14.)  In support of his argument, Plaintiff asserts the following three arguments: (1) Plaintiff's condition equals Listing 1.05C (*id.* at 8-11); (2) a medical expert was necessary at the hearing before the ALJ (*id.* at 11-14); and (3) the ALJ should have ordered an independent consultative exam.  (*Id.* at 14.)

1. Listing 1.05C

In his responses to interrogatories, Dr. Phillips, one of Plaintiff's treating physicians, stated that Plaintiff "suffers from a back impairment satisfying the criteria of Listing 1.05C."  (Tr. at 591.)  The ALJ, however, concluded that Plaintiff's back impairment did not meet the criteria of Listing 1.05C.  (*Id.* at 19.)  Listing 1.05C, the applicable regulation at the time of Plaintiff's hearing, outlines the criteria for a back impairment.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.05C (2001).  If the criteria of Listing 1.05C are not met, a claimant's impairments can still meet Listing 1.05C if the combined symptoms, signs, and laboratory findings are medically equivalent to the criteria of Listing 1.05C.  *See* 20 C.F.R. §§ 404.1526, 404.1616, 416.926, 414.1016 (2004).

*a. Expert Testimony on the Issue of Equivalence*

Plaintiff argues that the ALJ erred by not having an expert testify at Plaintiff's hearing about medical equivalence.  (Pl.'s Br. at 8.)  In support of this contention, Plaintiff relies upon Social Security Ruling 96-6p.  (*Id.*)  One of the stated purposes of Social Security Ruling 96-6p is to clarify and emphasize the policy that "An updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made" and to clarify and emphasize the interpretations of this policy.  *See* SSR

11

96-6p (purposes).  Social Security Ruling 96-6p later explains that, although the ALJ has the ultimate responsibility of deciding whether a listing is met, "longstanding policy requires that the judgment of a physician . . . on the issue of equivalence on the evidence before the [ALJ] . . . must be received into the record as expert opinion evidence and given appropriate weight."  *Id.*  However, the ruling later states that the ALJ may fulfill this requirement by obtaining the signature of a State Agency medical or psychological consultant on a Disability Determination and Transmittal Form, a Cessation or Continuance of Disability or Blindness Form, or on "other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings."  An updated medical opinion from a medical expert is only required if: (1) the ALJ does not receive additional medical evidence but, in the ALJ's opinion, the symptoms, signs, and laboratory findings indicate that a judgment of equivalence may be reasonable or (2) additional medical evidence is received that, in the ALJ's opinion, may change the State Agency medical or psychological consultant's findings that the impairment does not meet the listing.

The Court concludes that the ALJ was not required to have a medical expert testify at Plaintiff's hearing upon the issue of equivalence.  The Court finds no evidence suggesting that one of the two situations in which an ALJ must have an updated medical opinion is present.  The ALJ did not opine either that a judgment of equivalence was reasonable or that additional evidence could change a State Agency consultant's opinion that Plaintiff's impairment did not meet Listing 1.05C.  Thus, an updated medical opinion was unnecessary.  Because this was not one of the situations in which an updated opinion was necessary, the ALJ could satisfy the medical opinion requirement of Ruling 96-6p with one of the documents described in the ruling, signed by a State Agency medical

or psychological consultant. The record before the ALJ included a report by a State Agency medical consultant (*see* Tr. at 178-185), and Plaintiff has not claimed that this report is insufficient to satisfy the requirements of Ruling 96-6p. Instead, Plaintiff only argues that the ruling requires testimony of a medical expert, and Plaintiff fails to address the substance of the ruling, which allows this requirement to be fulfilled with proper documentation. The Court, therefore, concludes that the ALJ was not required to have a medical expert testify on the issue of equivalence, and accordingly, did not err by failing to do so.

### b. Dr. Phillips' Opinion on Equivalence

Also in response to interrogatories, Dr. Phillips stated that Plaintiff's "signs, symptoms, and other objective medical findings indicate that [Plaintiff] suffers from back impairment 'medically equivalent' to such criteria of Listing 1.05C." (Tr. at 593.) Plaintiff argues that Dr. Phillips' opinion was uncontroverted and that the ALJ cannot arbitrarily ignore an uncontroverted medical opinion. (Pl.'s Br. at 9.)

The United States Court of Appeals for the Fifth Circuit has stated that "While such uncontradicted expert opinions on the ultimate issue are not binding on the administrative law judge, he [or she] may not arbitrarily choose to ignore uncontroverted medical testimony." *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979). While it is true that the ALJ did not rely on Dr. Phillips' opinion that Plaintiff's impairment were medically equivalent to the criteria of Listing 1.05C, the Court finds that Dr. Phillips' opinion was controverted and that the ALJ did not arbitrarily reject it.

The Court finds that Dr. Phillips' opinion on medical equivalence was controverted. Plaintiff argues that Dr. Phillips' opinion was uncontroverted because his was the only opinion directly answering the precise question of medical equivalence. (Pl.'s Br. at 9.) Dr. Phillips is the only

medical opinion in the record that directly states that Plaintiff's impairments are medically equivalent to the criteria of Listing 1.05C. This statement by Dr. Phillips is equivalent to a statement that Plaintiff cannot work because of his back impairment. Other medical evidence of record clearly contradicts this conclusion. For example, in August 1999, Dr. Wharton evaluated Plaintiff and concluded that Plaintiff should be released to work with 0% impairment rating. (Tr. at 281.) Dr. Dayian and Dr. Townsend also concluded that Plaintiff had reached maximum medical improvement in 1999. (*Id.* at 222, 212.) In January 2000, after examining Plaintiff's medical records, Dr. Casner concluded that Plaintiff could perform light work. (*Id.* at 179.) Also in January 2000, Dr. Phillips himself released Plaintiff after an emergency room visit and instructed him that he could return to work if he did not lift more than ten pounds. (*Id.* at 550.) Thus, although none of the other doctors issued an opinion directly addressing the question of medical equivalence, other medical evidence of record does not illustrate that Plaintiff's impairments were as severe as Dr. Phillips stated they were.

In addition, the ALJ did not arbitrarily reject Dr. Phillips' opinion on medical equivalence. The ALJ's opinion reveals that he rejected Dr. Phillips' opinion because it addresses a listing issue, is not well supported by the objective medical evidence, and "there are some questions about whether [Dr. Phillips] actually treated [Plaintiff]." (*Id.* at 23.) Assuming that Dr. Phillips is a treating physician, the law is well established that the ALJ must conduct two types of analysis to determine what weight to assign a treating physician's opinion. First, the ALJ must determine if the opinion should received controlling weight. *See, e.g., Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (citing 20 C.F.R. § 404.1527(d)(2)). The treating physician's opinion on the nature and severity of a patient's impairment will receive controlling weight if the opinion is "well

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Id.* Second, if the ALJ determines that the opinion should not receive controlling weight, the ALJ must consider the factors outlined in 20 C.F.R. § 404.1527(d)(2) to decided what weight the opinion should receive. *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

In this case, the ALJ stated that Dr. Phillips' determination that Plaintiff is not disabled was not supported by the objective medical evidence. (Tr. at 23.) Thus, the ALJ stated a proper ground for declining to give the opinion controlling weight. The ALJ, did not, however, discuss the factors outlined in 20 C.F.R. § 404.1527(d)(2) when deciding what weight to assign Dr. Phillips' opinion. The Court concludes that any error by the ALJ in failing to address those factors is harmless because, as the ALJ stated "Dr. Phillips' statement is not binding as it addresses a listing issue." (Tr. at 23.) The ALJ is only obligated to apply the § 404.1527(d)(2) factors to medical *opinions*, but statements that a claimant is disabled or unable to work are not medical opinions within the meaning of the Social Security Regulations. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam). Accordingly, Dr. Phillips' statement that Plaintiff's symptoms are medically equivalent to the criteria of Listing 1.05C is not a medical opinion, to which the ALJ needed to apply the § 404.1527(d)(2) factors. Dr. Phillips' statement was a legal conclusion. *See Frank*, 326 F.3d at 620-21. Accordingly, the Court concludes that the ALJ did not err by declining to accept Dr. Phillips' opinion on medical equivalence.

### c. Re-contacting Dr. Phillips

Plaintiff next argues that the ALJ should have re-contacted Dr. Phillips to seek clarification

of his opinion.  (Pl.'s Br. at 9-10.)  "[T]he ALJ has a duty to develop the facts fully and fairly

relating to an applicant's claim for disability benefits."  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.

1995).  An ALJ's decision is not "substantially justified" if the ALJ does not fulfill this duty.  *Id.*

However, failure to develop the facts fully and fairly will not justify reversal unless the applicant

illustrates that he or she was prejudiced by the ALJ's failure.  *Id.*  The claimant can establish

prejudice by demonstrating that, if the ALJ had fully developed the record, different evidence would

have been produced and that evidence might have changed the outcome.  *Id.*

Section 404.1512(e) of the Social Security Regulations outlines the circumstances under

which the ALJ or Commissioner will re-contact a treating physician.  20 C.F.R. § 404.1512(e).  The

ALJ will re-contact a treating physician if the physician's report contains a conflict or ambiguity that

must be resolved, the report does not contain all the necessary information, or the report is not based

upon medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §

404.1512(e)(1).

The Court concludes that the ALJ did not err by not re-contacting Dr. Phillips for two

reasons.  First, Plaintiff has not alleged that the ALJ's failure to re-contact Dr. Phillips prejudiced

him.  Without detailing what new information the ALJ would have discovered and how that new

information may have changed the outcome, Plaintiff has not illustrated that reversal for failing to

fully and fairly develop the record is justified.  *See Ripley v. Chater*, 67 F.3d at 557.  Second,

Plaintiff has not alleged that one of the grounds outlined in 20 C.F.R. § 404.1512(e)(1) was present

that would have made it necessary for the ALJ to re-contact Dr. Phillips.  Nor does the ALJ's

opinion reveal that one of those grounds was present.  Instead, Plaintiff asserts that the ALJ should

have re-contacted Dr. Phillips before rejecting his opinion on medical equivalency because "the

16

opinion of Dr. Phillips was dispositive in the sense that it concerned medical equivalency to a Listed impairment." (Pl.'s Reply at 4.) Plaintiff also argues that the ALJ should have re-contacted Dr. Phillips because "[t]he ALJ's decision does not articulate what would make Dr. Phillips' opinion acceptable nor the evidence of record . . . that lends support to his opinion." (*Id.*) None of the reasons cited by Plaintiff are bases for requiring the ALJ to re-contact Dr. Phillips. If the Court were to accept Plaintiff's reasoning, the ALJ would have to re-contact the treating physician each time the ALJ rejected a legal conclusion of the treating physician. The Court, therefore, finds that the ALJ did not err by not re-contacting Dr. Phillips.

### d. The Opinions of Dr. Dayian and Dr. Townsend

Plaintiff's next argument in support of his contention that his condition equals Listing 1.05C is that the opinions of Dr. Dayian and Dr. Townsend contain inconsistencies and ambiguities and thus do not constitute substantial evidence. (Pl.'s Br. at 10-11.) Dr. Townsend is a treating specialist. (*See* Tr. at 189.) Dr. Dayian is also a treating specialist. (*See id.* at 221-22.) The inconsistencies in Dr. Townsend and Dr. Dayian's notes that are cited by Plaintiff are: (1) when Dr. Townsend treated Plaintiff in May 2000, he indicated that Plaintiff needed an updated MRI because his last MRI was in April 1999, but Plaintiff had a MRI in August 1999; (2) Plaintiff was told that he "was to receive steroid injections in the low back that took several weeks to be approved," but upon a later visit to the Methodist Family Practice Clinic he was told that he had never been approved for the injections at all. (*Id.* at 10-11.) The Court is unclear on why these two details would prevent the ALJ from relying on the opinions of Dr. Dayian and Dr. Townsend, and Plaintiff does not provide any clarification.

Substantial evidence is "that which is relevant and sufficient for a reasonable mind to accept

as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564.  The two details cited by Plaintiff do not persuade the Court that substantial evidence does not support the ALJ's decision.  Plaintiff seems to be relying on minutia to impugn the validity of Dr. Townsend and Dr. Dayian's opinions.  The Court rejects Plaintiff's argument that the ALJ should not have relied on Dr. Townsend and Dr. Dayian's opinions because of these two small inconsistencies.

### 2.  A Medical Expert

Plaintiff's second argument in support of his claim that substantial evidence does not support the ALJ's finding on his physical impairment is that a medical expert was necessary at the hearing.  (Pl.'s Br. at 11-14.)  In support of this argument, he cites the following three points: (1) determining medical equivalence requires medical judgment; (2) medical issues affecting Plaintiff's credibility could have been addressed; and (3) suboptimal imaging studies required medical judgment with consideration of Plaintiff's other symptoms.  (*See id.*)  The Court already addressed Plaintiff's argument that the ALJ should have had an expert testify about medical equivalence, and, therefore, will not address it again.  The Court notes that the latter two reasons cited by Plaintiff in support of his argument only illustrate two purposes a medical expert could have served but do not demonstrate why a medical expert was necessary.  In accordance with the reasoning outlined above, the Court finds that the ALJ did not err by not requiring expert testimony about medical equivalence.

### 3.  An Independent Orthopedic Consultative Exam

Plaintiff's third argument in support of his claim that substantial evidence does not support the ALJ's finding on his physical impairment is that the ALJ should have ordered an independent orthopedic consultative exam.  (Pl.'s Br. at 14.)  Plaintiff states that "[g]iven the above ambiguities

and inadequacies in the medical evidence, the ALJ should have given [Plaintiff] the opportunity to attend an independent consultative examination." (*Id.*)  Section 404.1517 of the Social Security Regulations provides that "If [the claimant's] medical sources cannot or will not give us sufficient medical evidence about [the claimant's] impairment for [the ALJ] to determine whether [the claimant is] disabled or blind, [the ALJ] may ask [the claimant] to have one or more physical or mental examination tests."  20 C.F.R. § 404.1517.

The Court concludes that the ALJ did not err by not ordering an independent orthopedic consultative exam because Plaintiff has not demonstrated that the medical sources relied upon by the ALJ were insufficient.  As previously discussed, Plaintiff has pointed to two small claimed inconsistencies in the opinions of Dr. Townsend and Dr. Dayian.  (Pl.'s Br. at 10-11.)  The Court has rejected Plaintiff's contention that the ALJ should not have relied upon their opinions because of these two inconsistencies.  Thus, the ALJ properly relied upon their opinions and presumably found them to constitute sufficient evidence of Plaintiff's impairment.  The ALJ has discretion to require a consultative examination and did not err by failing to require one.  *See* 20 C.F.R. § 404.1517.

For all of the above reasons, the Court concludes that substantial evidence supports the ALJ's findings on Plaintiff's physical impairment.  Accordingly, the Court recommends that the Commissioner's decision as to Plaintiff's physical impairment be affirmed.

B.  Does Substantial Evidence Support the ALJ's Findings on Plaintiff's Mental Impairments?

The Court now turns to Plaintiff's arguments pertaining to the ALJ's findings on his mental impairments.  Plaintiff has two main points in support of his claim that substantial evidence does not support the ALJ's findings on his mental impairments.  First, Plaintiff argues that Plaintiff's

affective disorder was found to be at listing level when given additional testing. (Pl.'s Br. at 14-16.) Second, Plaintiff claims that a psychological expert was necessary at his hearing. (*Id.* at 16-18.)

      1.  Additional Testing by Dr. Mount

Plaintiff first argues that additional testing indicated that Plaintiff's affective disorder was found to be at listing level. (Pl.'s Br. at 14-16.) In November 2003, two years after Plaintiff's hearing before the ALJ, and more than a year after the ALJ's decision, Dr. Mount conducted a psychological evaluation of Plaintiff. (Tr. at 642-51.) Dr. Mount concluded that Plaintiff's impairments met the criteria of Listing 12.07 for somatoform disorders and Listing 12.04 for affective disorders. (*Id.* at 654, 657, 660, 664.) The Appeals Council considered Dr. Mount's report and determined that it would not have changed the ALJ's decision. (*Id.* at 5-7.)

The Court concludes that it cannot consider Dr. Mount's report because it was not evidence of record before the ALJ. The Court's review is limited to whether substantial evidence supports the ALJ's decision and whether the ALJ utilized the proper legal standard. 42 U.S.C.A. § 405(g); *Greenspan*, 38 F.3d at 236. Thus, the Court cannot consider new evidence that was not before the ALJ.

According to 42 U.S.C.A. § 405(g), courts may remand additional evidence to the Commissioner "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.A. § 405(g). In order for the new evidence to be material, "the new evidence [must] relate to the time period for which benefits were denied, and . . . not concern evidence of a later-acquired disability or of the subsequent deterioration of a previously non-disabling condition." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985); *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir.

1989) (per curiam).  Furthermore, the Court must find a reasonable probability that the "new evidence would change the outcome of the [Commissioner's] decision." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Because the additional evidence that Plaintiff submits was not in existence at the time of the administrative proceedings, it satisfies the "new" requirement for remand. *See Haywood*, 888 F.2d at 1471.  Although the additional evidence offers insight into Plaintiff's recent mental health limitations, it does not address his mental condition at the time of his disability application or at the time of the hearing.  Moreover, the additional evidence post-dates the hearing by approximately two years.  Thus, the additional medical evidence appears to be, at best, evidence of deterioration of Plaintiff's condition, which is immaterial. *See, e.g.*, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (finding the additional evidence immaterial because it was dated "well outside the time frame in which the claimant applied for or was denied the benefits in question" and was evidence of a deteriorating condition).

With respect to the "good cause" requirement, the Court notes that since the additional evidence post-dates the hearing, it was impossible for Plaintiff to present it at his hearing.  Plaintiff, however, offers no reasoning on why he could not have obtained a report from Dr. Mount before the hearing.  Since Plaintiff offers no explanation as to why this evidence was not previously presented, he fails to meet the "good cause" requirement for remand.  Although the additional evidence could possibly change the Commissioner's decision, for the foregoing reasons, the Court, in addition to finding that the Court cannot consider the new evidence, also finds that remanding to consider the new evidence is inappropriate because Plaintiff has not shown "good cause."

2.  Psychological Expert

21

Plaintiff next argues that the testimony of a psychological expert was necessary at his hearing. (Pl.'s Br. at 16-17.) Plaintiff claims that "the determination of equivalency requires the judgment of a psychologist when borderline intellectual functioning is present among the impairments." (*Id.* at 16.) Plaintiff does not cite any authority in support of this argument. (*See id.*) Instead, Plaintiff asserts that his borderline IQ and affective disorder could form the basis of an equivalency determination and that a psychological expert could have helped the ALJ reach this conclusion. (*Id.*)

The Court concludes that the ALJ did not err by not having a psychological expert testify about equivalence. As the Court discussed above, Social Security Ruling 96-6p requires an updated medical opinion in two situations: (1) the ALJ does not receive additional medical evidence but, in the ALJ's opinion, the symptoms, signs, and laboratory findings indicate that a judgment of equivalence may be reasonable or (2) additional medical evidence is received that, in the ALJ's opinion, may change the State agency medical or psychological consultant's findings that the impairment does not meet the listing. SSR 96-6p. Plaintiff has not alleged that either of those situations is present. In the absence of either of those situations, the ALJ may rely upon any "other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings," and that bear a physician's signature. *Id.* Dr. Lambeth performed a government ordered, consultative examination in September 2000. (*See* Tr. at 511-17.) Plaintiff has made no allegations indicating why the ALJ could not rely on Dr. Lambeth's opinion when considering equivalence as to Plaintiff's mental impairment. The Court, therefore, concludes that the ALJ did not need to have a psychological expert testify at Plaintiff's hearing.

Plaintiff also argues that the additional testing conducted by Dr. Mont indicates that the judgment of a psychologist is necessary.  (Pl.'s Br. at 17-18.)  The Court has already concluded that it is unable to consider Dr. Mont's report.  Accordingly, the Court cannot take Dr. Mount's opinion into account when determining whether the ALJ should have had a psychological expert testify, and the Court has already determined that remand for consideration of Dr. Mount's opinion is inappropriate.

The Court concludes for the reasons stated above that substantial evidence supports the ALJ's findings as to Plaintiff's mental impairments.  The Court, therefore, recommends that the District Court affirm the decision of the Commissioner on this ground.

C.  <u>Did Plaintiff Have Significant Nonexertional Limitations that Precluded Work on a "Regular and Continuing Basis?"</u>

The final issue is Plaintiff's claim that he had significant nonexertional limitations that precluded him from working on a "regular and continuing basis."  (Pl.'s Br. at 18-20.)  In support of this argument, Plaintiff cites the opinions of Dr. Cox and Dr. Chappuis, who were both State Agency doctors that reviewed Plaintiff's medical records.  (*Id.* at 18.)  Dr. Cox reported that Plaintiff would have moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (Tr. at 380.)  Dr. Chappius later reviewed and affirmed Dr. Cox's findings.  (*Id.* at 365, 381.)  Plaintiff relies upon his testimony at the hearing that he experienced problems with supervisors that contributed to his termination, which he states contradicts the ALJ's statement that no affirmative evidence existed that his ability to respond to supervision was compromised.  (Pl.'s Br. at 20.)  Plaintiff also relies upon Dr. Mount's opinion, which the Court cannot consider.  (Pl.'s Br. at 19.)

Sections 404.1545(b) and (c) define residual functional capacity to include the ability to work on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b), (c). Accordingly, implicit in the ALJ's RFC determination is the conclusion that Plaintiff can work on a "regular and continuing basis." The Court concludes that substantial evidence supports this decision.

The only evidence that supports Plaintiff's claim that he is unable to work on a "regular and continuing basis" is Dr. Cox's report and Plaintiff's own testimony. The ALJ assigned minimal weight to Dr. Cox's opinion because Dr. Cox did not have the benefit of listening to the testimony at the hearing and reviewing medical records submitted subsequent to his review of Plaintiff's medical records. (Tr. at 22.) In addition, the ALJ also concluded that Plaintiff's credibility was questionable. (*Id.* at 21.) In support of his credibility determination, the ALJ stated that Dr. Townsend had noted conduct by Plaintiff that conflicted with his reports of pain and that Dr. Dayian had reported evidence that supported a conclusion that Plaintiff exaggerated his symptoms and limitations. (*Id.*) In addition, the ALJ noted that the objective medical evidence does not support Plaintiff's assertions of pain and disability. (*Id.* at 22.) Plaintiff does not challenge the ALJ's credibility determination.[2] The rest of Plaintiff's medical history lacks evidence that Plaintiff is unable to work on a "regular and continuing basis." Other than Dr. Phillips' opinion that Plaintiff is completely disabled, the rest of the doctors who examined Plaintiff did not conclude that Plaintiff had limitations that would prevent him from maintaining employment. Beyond Plaintiff's own testimony, which the ALJ found to be of questionable credibility, the only support Plaintiff offers

---

[2]The only point Plaintiff raises regarding the ALJ's credibility determination is that, if the ALJ had a medical expert testify at Plaintiff's hearing, the expert could have clarified issues relating to Plaintiff's credibility. (Pl.'s Br. at 12.) Plaintiff does not, however, challenge the ALJ's credibility determination.

for his argument that he cannot maintain employment is one report by a State Agency, non-examining physician, who did not have Plaintiff's complete medical history. The Court finds that this evidence is inadequate for the Court to find that substantial evidence did not support the ALJ's RFC determination. The Court, therefore, finds that the ALJ's RFC determination was supported by substantial evidence.

## CONCLUSIONS

The Court concludes that substantial evidence supports both the ALJ's determination regarding Plaintiff's physical impairments and also the ALJ's determination regarding Plaintiff's mental impairments. The Court also concludes that substantial evidence supports the ALJ's determination that Plaintiff can work on a "regular and continuing basis."

## RECOMMENDATION

The Court recommends that the District Court affirm the decision of the Commissioner.

Signed this 24th day of August, 2006.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).